UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABRIEL HERRERA, CURTIS HENNAGER, <u>et al.</u>, individually and on behalf of all others similarly situated,<br><br>DANIEL ABBOTT, ELIZABETH AMMERMAN, AMIR AZARCON, SEAN CONWAY, BLAKE MARTIN, MADISON MURPHY, CARLIN ROLLENHAGEN, WINSTON TOLLIVER, DAVID UNICH, DYLAN WARMACK, FNAN YSAHAK, individually,<br><br><div align="center">Plaintiffs,</div><br><div align="center">-v-</div><br>COMME DES GARÇONS, LTD., <u>ET</u> <u>AL</u>.,<br><br><div align="center">Defendants.</div> | CIVIL ACTION NO. 21 Civ. 4929 (VEC) (SLC)<br><br><div align="center"><u>**OPINION & ORDER**</u></div> |

**SARAH L. CAVE**, United States Magistrate Judge.

<div align="center">

**I. INTRODUCTION**

</div>

Before the Court in this putative collective and class action, in which thirteen Plaintiffs[1] seek unpaid overtime compensation and other relief against two fashion companies and their principals, is Plaintiffs' renewed motion for conditional certification and court-authorized notice pursuant to Section 216(b) of the FLSA.[2]  (ECF No. 117 (the "Motion")).  In the Motion, Plaintiffs seek authorization to send notice of this action to all current and former sales managers, floor

---

[1] Plaintiffs are: Daniel Abbott; Elizabeth Ammerman; Amir Azarcon; Sean Conway; Curtis Hennager; Gabriel Herrera; Blake Martin; Madison Murphy; Carlin Rollenhagen; Winston Tolliver; David Unich; Dylan Warmack; and Fnan Ysahak.  (ECF No. 114 ¶¶ 7–58).
[2] Fair Labor Standards Act, 29 U.S.C. § 101 <u>et</u> <u>seq.</u>

managers, and assistant floor managers who were employed at Defendants'[3] New York and Los Angeles stores from June 3, 2018 until October 5, 2024 (the "Proposed Collective"), as well as equitable tolling of the statute of limitations. (ECF No. 118 at 8-9, 21–25). Defendants do not oppose the Court issuing notice of this action to sales managers, floor managers, and assistant floor managers at DSMNY. (ECF No. 132 at 8). They do, however, oppose inclusion of DSMLA employees in the Proposed Collective and equitable tolling of the statute of limitations. (Id. at 7, 10–17, 22-23). For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

The factual and procedural background of this action is set forth in detail in the prior reported decisions in this action and is incorporated by reference. See Herrera v. Comme Des Garçons, Ltd., No. 21 Civ. 4929 (VEC), 2022 WL 3348099, at *1-2 (S.D.N.Y. Aug. 12, 2022) ("Herrera I"), vacated and remanded, 84 F.4th 110, 112-13 (2d Cir. 2023) ("Herrera II").[4] We set forth only the background pertinent to the Motion.[5]

---

[3] Defendants are: Comme Des Garçons, Ltd. ("CDG"); Dover Street Market New York LLC ("DSMNY"); Elaine Beuther; and James Gilchrist. (ECF No. 114 ¶¶ 59–113). Defendants also operate a store in Los Angeles ("DSMLA"), which is not a party to this action and at which none of Plaintiffs were employed. (See ECF No. 114).

[4] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

[5] In deciding the Motion, we have considered: Plaintiffs' Third Amended Complaint (ECF No. 114 (the "TAC")); Plaintiffs' memorandum of law in support of the Motion (ECF Nos. 117–18); the declaration of Plaintiffs' counsel and exhibits thereto, including declarations from four Plaintiffs and other employees of Defendants (ECF Nos. 119-3 – 119-17; 122-2; 122-3); Defendants' memorandum of law in opposition to the Motion (ECF No. 132); the declaration from Defendants' counsel and exhibits thereto (ECF Nos. 133 – 133-4); declarations from two employees of DSMLA submitted by Defendants in opposition to the Motion (ECF Nos. 134–35); and Plaintiffs' reply memorandum of law (ECF No. 139).

### A. Factual Background

#### 1. Plaintiffs' Employment at DSMNY

During their initial employment at DSMNY, Plaintiffs held the position of sales associate, the responsibilities for which were greeting customers and making sales and for which they were paid hourly plus overtime and a commission. (ECF Nos. 119-3 ¶¶ 4-7; 119-4 ¶¶ 4-7; 122-2 ¶¶ 4-7; 122-3 ¶¶ 4-7).[6] Plaintiffs were later employed as assistant floor managers, floor managers, or sales managers at DSMNY. (ECF Nos. 114 ¶¶ 8–9, 12–13, 16–17, 20–21, 24–25, 28–29, 32–33, 36–37, 40–41, 44–45, 48–49, 52–53, 56–57; 119-3 ¶¶ 2, 4; 119-4 ¶¶ 2, 4; 122-2 ¶¶ 2, 4; 122-3 ¶¶ 2, 4).[7] None of these job titles "involved the exercise of discretion or independent judgment." (ECF Nos. 119-3 ¶ 22; 119-4 ¶ 20; 122-2 ¶ 20; 122-3 ¶ 14).

As sales managers, Plaintiffs' "primary duty remained making sales[,]" for which each Plaintiff had a "personal sales target" they could be disciplined for failing to meet. (ECF No. 122-2 ¶ 8).[8] Sales managers were paid a salary and a percentage commission from store-wide sales as well as a one percent commission on their personal sales. (Id. ¶ 9). In addition to the duties of a sales associate, sales managers had "a few additional responsibilities, including end of day reports and opening and closing the tills[.]" (Id. ¶ 10). Sales managers did not schedule, interview, hire or fire employees, oversee projects, or dictate operations within DSMNY. (Id.

---

[6] Before becoming a sales associate, Herrera worked as a security guard, a position not relevant to the Proposed Collective. (ECF No. 119-3 ¶ 4(a)). Herrera was also a "Senior Zone Manager," but he does not contend that this title was "fraudulent[,]" nor does he request that other individuals holding this role be included in the Proposed Collective. (ECF No. 119-3 ¶¶ 20).

[7] Plaintiffs have submitted declarations from only four of the eleven Plaintiffs. (ECF Nos. 119-3; 119-4; 122-2; 122-3).

[8] Of the four Plaintiffs who submitted declarations, only Hennager worked as a sales manager. (Compare ECF No. 122-2 with ECF Nos. 119-3 ¶ 4, 119-4 ¶ 4, and 122-3 ¶ 4). According to the TAC, Martin and Unich also worked as sales managers, but neither submitted a declaration. (ECF No. 114 ¶¶ 33, 49).

¶¶ 11–12).  Plaintiffs contend that "[s]ales manager was largely a ceremonial title that carried little to no authority."  (Id. ¶ 11).

As assistant floor managers, Plaintiffs' "primary duty remained making sales[,]" as well as "visual maintenance (maintaining floor standards), assisting with deliveries and stocking, and other daily store tasks."  (ECF Nos. 119-3 ¶ 8; 119-4 ¶ 8; 122-2 ¶ 13; 122-3 ¶ 8).  Like sales managers, in addition to the duties of sales associates, assistant floor managers were responsible for end of day reports and opening and closing the tills.  (ECF Nos. 119-3 ¶ 10; 119-4 ¶ 122-2 ¶ 10; 122-2 ¶ 15; 122-3 ¶ 10).  Assistant floor managers did not schedule, interview, hire or fire employees, oversee projects, or dictate operations within DSMNY.  (ECF Nos. 119-3 ¶¶ 11–12; 119-4 ¶¶ 11–12; 122-2 ¶¶ 16–17; 122-3 ¶¶ 11–12).  Assistant floor managers were not paid overtime, but received a salary plus a commission based on store-wide sales and a one percent commission based on a personal sales target they could be disciplined for failing to meet.  (ECF Nos. 119-3 ¶ 9; 119-4 ¶ 9; 122-2 ¶¶ 14, 18; 122-3 ¶ 9).  Plaintiffs contend that assistant floor manager was also "largely a ceremonial title that carried little to no authority."  (ECF Nos. 119-4 ¶ 8; 122-2 ¶ 13; 122-3 ¶ 8).  Like sales associates, the work location for assistant floor managers was the retail storefront.  (ECF Nos. 119-3 ¶ 13; 119-4 ¶ 13; 122-2 ¶ 19; 122-3 ¶ 13).

As floor managers, like sales associates, sales managers, and assistant floor managers, Plaintiffs' primary duty remained "making sales."  (ECF Nos. 119-3 ¶ 14; 119-4 ¶ 14).  Like the other positions, floor managers were also responsible for visual maintenance, assisting with deliveries, and other daily tasks.  (Id.)  Floor managers had the additional responsibility for end of year reports, but did not schedule, interview, hire or fire employees, oversee projects, or dictate operations within DSMNY.  (ECF No. 119-3 ¶¶ 16–18; 119-4 ¶¶ 16–18).  Floor managers

were also paid a salary plus a commission based on store-wide sales and a one percent commission on their personal sales target they could be disciplined for failing to meet.  (ECF Nos. 119-3 ¶ 15; 119-4 ¶ 15).

Plaintiffs allege that they worked at least eighteen hours of overtime each week, for which Defendants failed to pay them overtime wages.  (ECF Nos. 119-3 ¶¶ 23-36; 119-4 ¶¶ 21–33; 122-2 ¶¶ 21–36; 122-3 ¶¶ 15–28).   In addition, Plaintiffs were required to work "intermittent" additional hours for biannual "Tachiagari,"[9] sales, events, remerchandising, and manager meetings, all of which amounted to additional overtime hours for which Defendants did not compensate them.  (ECF Nos. 119-3 ¶¶ 37–45; 119-4 ¶¶ 34–42; 122-2 ¶¶ 37–45; 122-3 ¶¶ 29–37).  Plaintiffs name approximately two dozen other employees at DSMNY who worked over 40 hours per week in the positions of sales manager, assistant floor manager, or floor manager but whom Defendants failed to pay overtime wages.  (ECF Nos. 119-3 ¶¶ 51–52; 119-4 ¶¶ 48–49; 122-2 ¶¶ 51–52; 122-3 ¶¶ 43–44).  Plaintiffs do not name any such employees at DSMLA.  (See generally ECF Nos. 119-3; 119-4; 122-2; 122-3).

Plaintiffs complain that Defendants employed three company-wide policies that resulted in Plaintiffs' working overtime hours for which they were not properly paid:  (i) imposing personal sales targets that were unachievable in a 40-hour workweek; (ii) requiring them to work extra hours for Tachiagari, sales, events, and remerchandising; and (iii) requiring them to "be available for, and to in fact, work during lunch breaks, come in early and leave late, submit end of day

---

[9] Tachiagari is a Japanese word for "beginning" that referred to DSMNY's seasonal changeover of merchandise.  (ECF Nos. 119-3 ¶ 37; 119-4 ¶ 34; 122-2 ¶ 37; 122-3 ¶ 29).

reports, message clients outside of work, and [] attend managers meetings and compile reports[.]" (ECF Nos. 119-3 ¶¶ 46–48; 119-4 ¶¶ 43–45; 122-2 ¶¶ 46–48; 122-3 ¶¶ 38–40).

### 2. Employment Policies at DSMLA

Plaintiffs assert "[u]pon information and belief" that the title "zone manager" at DSMLA "was the equivalent" of assistant floor manager or floor manager at DSMNY and that a zone manager's "primary duty" was making sales. (ECF Nos. 119-4 ¶ 50; 122–2 ¶ 53; 122-3 ¶ 45). Plaintiffs submit an affidavit from Eric Michael Vargas, who was employed as an assistant store manager at DSMLA from September 2018 until May 2021. (ECF No. 119-6 ¶¶ 2–3 (the "Vargas Affidavit")). Vargas attests that the titles of "zone/floor manager" and "assistant zone/floor manager" were "interchangeable" and primarily involved "sales, not management." (Id. ¶¶ 5–6). Zone/floor managers and assistant zone/floor managers at DSMLA had personal sales targets, shared in the commission pool with sales associates, and worked in the retail store rather than an office, and did not schedule, interview, hire, or fire employees, oversee projects, dictate operations, or exercise discretion or independent judgment about store operations. (Id. ¶¶ 8–11).

Plaintiffs also submit an affidavit from Jenifer Mejia, an "HR Generalist" who worked out of DSMNY and was responsible for human resources for both DSMNY and DSMLA from February to July 2019. (ECF No. 119-7 ¶¶ 2–4). Mejia alleges that Defendants "perpetrated the same scheme at both stores: creating fraudulent 'manager' titles for individuals who were really sales associates" to deprive them of overtime wages. (Id. ¶ 8). Mejia asserts that the titles of sales manager, assistant floor manager, and sales manager were "largely ceremonial" because employees in these roles "spent the balance of their time on making sales" and "did not have the

power to hire and fire, worked out of a retail environment rather than an office, and did not have discretion or the ability to exercise independent judgment in the operation of the store." (Id. ¶ 11).  These three positions "were interchangeable" with the titles of zone manager and assistant zone manager at DSMLA, where zone managers and assistant zone managers were primarily responsible for sales and did not have the power to hire and fire, worked in the retail environment, and did not have discretion or independent judgment regarding store operations. (Id. ¶¶ 18–19).  Sales managers, assistant floor managers, and floor managers at DSMNY, and zone managers and assistant zone managers at DSMLA worked well over forty hours per week and were not paid overtime wages.  (Id. ¶¶ 12, 20).

Defendants submit declarations from two floor managers at DSMLA, Glenn Gammad and Cameron Fetterly.  (ECF Nos. 134–35).  Both attest that, as floor managers at DSMLA, they are paid on a salary basis and supervise other full-time employees.  (ECF Nos. 134 ¶¶ 2, 4; 135 ¶¶ 2, 4).  The responsibilities of floor managers at DSMLA include: ensuring that their direct reports follow overtime protocols; "actively managing" their direct reports; evaluating the skills of their direct reports; approving or disapproving overtime requests; consulting about disciplinary matters; managing general store operations; and managing brand accounts.  (ECF Nos. 134 ¶ 5; 135 ¶ 5).  Neither floor managers nor assistant floor managers at DSMLA "regularly" work more than 40 hours per week, but when they do, they are paid at 150% of their regular hourly rate for overtime hours.  (ECF Nos. 134 ¶¶ 7–8; 135 ¶ 7).  Gammad and Fetterly attest that DMSLA "employs a strict time management system in order to account for hours worked" and requires employees to request permission to work overtime.  (ECF Nos. 134 ¶ 9; 135 ¶ 8).  Both Gammad and Fetterly believe that they are properly classified as exempt employees and do not believe

that they are entitled to payment of overtime for hours worked over 40 per week. (ECF Nos. 134 ¶ 3; 135 ¶ 3).

### 3. Plaintiffs' Claims

Plaintiffs allege that Defendants misclassified them as exempt from the overtime pay requirements of the FLSA and NYLL[10] and thus failed to pay them overtime wages. (ECF No. 114 ¶¶ 8–9, 12–13, 16–17, 20–21, 24–25, 28–29, 32–33, 36–37, 40–41, 44–45, 48–49, 52–53, 56–57, 129–31, 217–29 (the "Overtime Claims")). Plaintiffs also allege that Defendants failed to provide them, at the time they were each hired, a notice containing the rate of pay and other information required by NYLL § 195(1)(a). (Id. ¶¶ 193–94, 230–33 (the "Wage Notice Claims")). Finally, Plaintiffs allege that Defendants failed to provide them with each wage payment a statement containing the rates of pay and other information required by NYLL § 195(3). (Id. ¶¶ 195–96, 234–37 (the "Wage Statement Claims")).

### B. Procedural Background

Plaintiffs filed this action on June 3, 2021. (ECF No. 1). On February 3, 2022, Plaintiffs moved for certification of a collective under section 216(b) of the FLSA. (ECF No. 56 (the "First Collective Motion")). On August 12, 2022, Judge Caproni granted Defendants' motion to dismiss Plaintiffs' Overtime Claims for failure to state a claim and declined to exercise supplemental jurisdiction over the Wage Notice and Wage Statement Claims. See Herrera I, 2022 WL 3348099. Judge Caproni denied as moot the First Collective Motion. Id. at *5.

In October 2023, the Second Circuit vacated Herrera I and remanded the action. See Herrera II, 84 F.4th at 116–18. Following remand, Judge Caproni held a conference to discuss

---

[10] New York Labor Law § 190 et seq.

Plaintiffs' proposed amendments.  (ECF No. 128-1 at 3; see ECF No. 130).  On March 29, 2024, Plaintiffs filed the TAC, their fourth pleading in this action.  (ECF No. 114).

On April 11, 2024, Plaintiffs filed the Motion, in which they ask the Court to (i) permit distribution of a notice (the "Proposed Notice") to the Proposed Collective, (ii) compel Defendants to disclose the names and contact information for the members of the Proposed Collective, and (iii) equitably toll the statute of limitations as of June 3, 2018.  (ECF Nos. 117–19; 122).  On May 3, 2024, Defendants filed their opposition (ECF Nos. 132–35), and on May 10, 2024, Plaintiffs filed their reply (ECF No. 139).  Judge Caproni has referred the Motion to the undersigned.  (ECF No. 120).

### III. DISCUSSION

#### A. Legal Standard

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While the FLSA does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," courts have long construed Section 216(b) to grant district courts the authority to order that notice be given to potential plaintiffs informing them of the option to join the suit.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam) ("Although one might read the [FLSA],

by deliberate omission, as not providing for notice . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case."). Although orders authorizing notice are sometimes referred to as orders "certifying" a collective action, the FLSA does not contain a certification mechanism. See Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). Thus, where a court refers to "certifying" a collective action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals. Id. The recognition of a collective action is thus equivalent to a "'case management' tool for district courts to employ in 'appropriate cases.'" Id. (quoting Hoffmann-La Roche, 493 U.S. at 169).

The Second Circuit has approved a two-step process to evaluate whether to approve a collective action. Myers, 624 F.3d at 554–55. First, the court must make "an initial determination" whether to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs as to whether the alleged FLSA violation occurred. Id. at 555; see Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). A plaintiff must make a "modest factual showing" that he and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). At this first stage, the case has not typically "had the benefit of full discovery[,]" and thus courts consider the pleadings as well as supporting affidavits from the named plaintiff to evaluate whether he has made the "modest factual showing" that he is similarly situated to potential opt-in plaintiffs vis-à-vis the defendants' allegedly unlawful employment practices. Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016). "For similar reasons, courts

do 'not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations' at the first stage." Korenblum, 195 F. Supp. 3d at 480 (quoting In re Penthouse Exec. Club Comp. Litig., No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010)).

At the first step, a plaintiff's "burden of proof is low, [but] it is not non-existent—'certification is not automatic.'" Romero v. H.B. Auto. Grp., Inc., No. 11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012); see Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (explaining that "plaintiff's supporting allegations must be specific, not conclusory"). A plaintiff cannot satisfy his burden at the conditional certification stage "by unsupported assertions," Myers, 624 F.3d at 555, or with "conclusory allegation[s.]" Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006). "Evidence is required." Peralta v. CB Hosp. & Events, LLC, No. 22 Civ. 10805 (GHW) (BCM), 2024 WL 916523, at *4 (S.D.N.Y. Mar. 4, 2024).

At the second step, on a more complete record following discovery, the district court determines whether a "collective action" may proceed based on the named plaintiff having shown that the plaintiffs who opted in are actually "similarly situated" to him. Myers, 624 F.3d at 555. If the court is not convinced, it may "de-certif[y]" the action and dismiss the opt-in plaintiffs' claims without prejudice. Id.

Where the parties have completed, or substantially completed, conditional collective certification discovery, courts in this District have applied "a modest 'plus'" standard of review to motions under FLSA § 216(b). Korenblum, 195 F. Supp. 3d at 482 (quoting Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)); see Brown v. Barnes & Noble, Inc., No. 16 Civ. 7333 (RA), 2019 WL 5188941, at *2 (S.D.N.Y. Oct. 15, 2019) (finding that "modest

plus" approach "made eminent sense" where parties had completed six months of discovery "targeted to conditional certification"). In applying the "modest plus" standard of review, courts "look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete.'" Korenblum, 195 F. Supp. 3d at 482 (quoting Creely, 789 F. Supp. 2d at 826). In reviewing the parties' evidence, "the Court still will not decide the ultimate merits of the case or issues better suited for a decertification motion." Id. Rather, the Court continues to assess whether "'it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs'—in other words, that Plaintiffs have, through discovery, 'advanced the ball down the field.'" Id. (quoting Creely, 789 F. Supp. 2d at 827).

**B.  Application**

Applying the "modest plus" standard, the Court finds that Plaintiffs have not shown that distribution of the Proposed Notice to the Proposed Collective, as Plaintiffs formulate it, is warranted. As explained further below, however, the Court finds that Plaintiffs' evidence does support a narrower collective, comprised of sales managers, floor managers, and assistant floor managers who worked at DSMNY on or after June 3, 2018 (the "Collective").

**1.  Plaintiffs are similarly situated to other sales, floor, and assistant floor managers at DSMNY.**

The test for determining whether Plaintiffs are "similarly situated" to the other members of the Proposed Collective is "whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action." Davis v. Lenox Hill Hosp., No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (quoting Foster v. Food

Emporium, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000)).  Plaintiffs'

burden is "minimal." Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007).  "At

this stage of the litigation, Plaintiffs need only proffer substantial allegations of a factual nexus

between them and potential opt-in plaintiffs with regard to an FLSA violation." Taveras v. D & J

Real Est. Mgmt. II, LLC, 324 F.R.D. 39, 41 (S.D.N.Y. 2018).  "In cases involving employees at

multiple business locations, 'courts consider whether the plaintiffs have made an adequate

factual showing to support an inference that . . . a uniform policy or practice exists, and whether

the locations share common ownership or management.'" Peralta, 2024 WL 916523, at *5

(quoting Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013)).

Plaintiffs argue that they are similarly situated to other sales managers, assistant floor

managers, and floor managers at both DSMNY and DSMLA.  (ECF No. 118 at 9–19).  Defendants

oppose the inclusion of DSMLA employees in any collective.  (ECF No. 132 at 7–20).  The Court

finds that Plaintiffs' evidence, while sufficient to meet their modest burden of a collective

including sales managers, assistant floor managers, and floor managers at DSMNY—which

Defendants do not oppose—is insufficient to meet that burden with respect to DSMLA

employees.

First, DSMLA is not a named Defendant in this action, and no Plaintiff worked there.  (See

ECF No. 114).  Aside from conclusory mention of "comparable positions with different titles" at

DSMLA (id. ¶ 205), the TAC contains neither any substantive allegations about Defendants'

classification or overtime policies at DSMLA nor any basis on which to find that DSMNY and

DSMLA were joint employers as could justify including DSMLA employees in the Proposed

Collective.  See Herman v. RAR Sec. Serv. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (discussing

"economic reality" test for assessing whether a defendant is an "employer" under the FLSA). Plaintiffs' own pleading fails to support their attempt to expand DSMNY-based claims into a nationwide collective including DSMLA employees. See Chang Yan Chen v. Lilis 200 W. 57th Corp., No. 19 Civ. 7654 (VEC), 2021 WL 135248, at *1 n.2 (S.D.N.Y. Jan. 14, 2021) (declining to consider certifying collective against entity that was no longer a defendant in the action).

Second, the four Plaintiffs who submitted declarations in support of the Motion implicitly concede that they only communicated with other employees at DSMNY, not at DSMLA. While they name approximately two dozen other employees at DSMNY who worked over 40 hours per week in the positions of sales manager, assistant floor manager, or floor manager but whom Defendants failed to pay overtime wages, they neither name nor describe any such employees at DSMLA. (ECF Nos. 119-3 ¶¶ 51–52 (listing employees whom he personally observed "working at Defendants' New York store"); 119-4 ¶¶ 48–49 (same); 122-2 ¶¶ 51–52 (same); 122-3 ¶¶ 43–44 (same)). Plaintiffs obscure the fact that the only employees whom they identify as part of the Proposed Collective worked at DSMNY (ECF No. 139 at 11), but their failure to name or describe personal interactions with any such employees at DSMLA undermines their attempt to include DSMLA employees in the Proposed Collective. (See generally ECF Nos. 119-3; 119-4; 122-2; 122-3). See Johnson-Cradle v. KPS Affiliates Inc., No. 22 Civ. 1052 (PGG) (SLC), 2023 WL 3091675, at *5 (S.D.N.Y. Apr. 26, 2023) (limiting collective to location where plaintiff worked because she "attested only to the experiences she and the colleagues with whom she spoke had" at that location); Rojas v. Kalesmeno Corp., No. 17 Civ. 0164 (JCF), 2017 WL 3085340, at *5 (S.D.N.Y. July 19, 2017) (declining to extend collective to other locations where plaintiffs had not worked and had not conversed with employees from those locations).

Third, the Vargas and Mejia Affidavits do not support a finding that DSMLA employees were similarly situated to Plaintiffs at DSMNY. Both discuss Defendants' policies as to zone managers and assistant zone managers, but the only Plaintiff who temporarily worked as a zone manager—Herrera—disavows asserting claims on behalf of other employees with that title. (ECF No. 119-3 ¶ 20). In addition, curiously, neither Vargas nor Mejia describe with any specificity DSMLA floor managers or assistant floor managers whom they knew to have worked more than 40 hours but not to have received overtime. Cf. West v. LaserShip, Inc., No. 21 Civ. 5382 (LTS) (SLC), 2024 WL 1461403, at *7 (S.D.N.Y. Apr. 4, 2024) (denying collective certification where plaintiffs failed to identify or describe similarly situated employees who were deprived of overtime); Stewart v. Hudson Hall LLC, No. 20 Civ. 885 (PGG) (SLC), 2021 WL 1750368, at *8 (S.D.N.Y. May 4, 2021) (same). In addition, Mejia worked for Defendants for less than five months (ECF No. 119-7 ¶ 2), calling into question the credibility of her assertions about Defendants' operations and policies during the entire period of the Proposed Collective. In contrast, Gammad and Fetterly, whose tenure overlaps with Vargas' at DSMLA, attest that floor managers were salaried and rarely worked overtime, and that assistant floor managers who worked over 40 hours per week were paid overtime wages. (ECF Nos. 119-6 ¶ 2; 134 ¶¶ 1–2, 4; 135 ¶¶ 1–2, 4). Contrary to Plaintiffs' characterization, Gammad and Fetterly's declarations do not corroborate Plaintiffs' claims (ECF No. 118 at 19), but rather cast doubt on the veracity of the evidence on which Plaintiffs rely to satisfy their modest burden of showing that employees in DSMNY and DSMLA were similarly situated. See Stewart, 2021 WL 1750368, at *8 (denying collective certification of overtime claims where defendants submitted evidence of payment of overtime wages).

15

Accordingly, because Plaintiffs have failed to demonstrate that they are similarly situated to zone managers and assistant zone managers at DSMLA, the Court will limit collective certification to sales managers, assistant floor managers, and floor managers at DSMNY.

### 2.  **The Proposed Notice must be amended.**

Plaintiffs request that the Proposed Notice be sent to the Proposed Collective, which they define to include sales, floor, and assistant floor managers from June 3, 2018, three years before this action commenced.  (ECF No. 118 at 9, 21).  Defendants argue that this "proposed temporal scope unnecessarily broadens the range of individuals who may receive the notice[,]" given that the parties had agreed to several tolling periods.  (ECF No. 132 at 20–21).  The Court finds that several amendments to the Proposed Notice are warranted.

First, as noted above, the Collective is limited to sales, floor, and assistant floor managers at DSMNY, and excludes such employees at DSMLA.  (See § III.B, supra).

Second, although Defendants point to several periods during which the parties agreed to toll, they do so in connection with their opposition to equitable tolling—which the Court discusses below—but not in opposition to using June 3, 2018 as the starting date for the Proposed Collective.  (ECF No. 132 at 20–21).  The FLSA has a two-year statute of limitations, or in the case of willful violations, three years.  29 U.S.C. § 255(a).  The question of whether Defendants willfully violated the FLSA remains a disputed issue, and Plaintiffs have not yet moved for certification of their NYLL claims, and the weight of authority in this Circuit provides that a three-year notice period is appropriate in these circumstances.  Pena v. SP Plus Corp., No. 20 Civ. 1370 (GBD) (SLC), 2021 WL 2250766, at *7 (S.D.N.Y. May 28, 2021) (collecting cases).  Therefore, a three-year notice period, i.e., starting on June 3, 2018, shall apply.

Third, Defendants do not appear to oppose Plaintiffs' proposal that notice be transmitted both by first class mail and text message. (See ECF Nos. 11–12; see generally ECF No. 132). See Pena, 2021 WL 2250766, at *8 (directing parties to meet and confer about changes to notice). Distribution by first class mail and text message is appropriate in these circumstances. See Aleman-Valdivia v. Top Dog Plumbing & Heating Corp., 20 Civ. 421 (LDH) (MMH), 2021 WL 4502479, at *10–11 (E.D.N.Y. Sept. 30, 2021) (permitting mail and text message distribution of notice to putative class members where defendants did not object to such means of distribution).

Fourth, Defendants take issue with certain language in Plaintiffs' Proposed Notice. Defendants: (i) oppose requiring opt-in plaintiffs to accept representation by Plaintiffs' counsel; (ii) request that contact information for Defendants' counsel be included; and (iii) object to Plaintiffs' "engaging in hyperbole or attempting to create a false sense of urgency" by using bold face type and referring to the effect on individuals' "legal rights." (ECF No. 132 at 23–24). Plaintiffs respond that the Proposed Notice already apprises opt-in plaintiffs that they "can retain their own counsel" and dispute Defendants' other two criticisms. (ECF No. 139 at 14 (citing ECF No. 119-10 ¶ 13)). The Court finds that the language in paragraph 13 of the Proposed Notice adequately apprises opt-in plaintiffs of the ability retain their own lawyer. See Romero v. Flaum Appetizing Corp., No. 07 Civ. 7222 (BSJ), 2009 WL 2591608, at *6 (S.D.N.Y. Aug. 17, 2009). The Court also grants Defendants' request to include in the notice contact information for their counsel. See Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *7 (S.D.N.Y. Sept. 16, 2013) (observing that "FLSA notices routinely include this information"). Finally, the Court finds that Defendants' other criticisms of the formatting, typeface, and

references to opt-in plaintiffs' legal rights are not well-founded and denies Defendants' requests for further revisions of these aspects of the Proposed Notice.

The Court directs the parties to meet and confer to implement these instructions to revise the Proposed Notice and by Wednesday, October 9, 2024, submit a revised, redlined notice for the Court's review and approval.

### 3. Defendants must disclose contact information.

As is customary following a grant of conditional certification of an FLSA collective, the Court also orders Defendants to provide by October 9, 2024 a computer-readable list containing the (i) name; (ii) last known mailing address; (iii) last known telephone number; (iv) email address if known; and (v) dates of employment, for all sales managers, assistant floor managers, and floor managers employed at DSMNY since June 3, 2018.  See Johnson-Cradle, 2023 WL 3091675, at *8 (ordering similar disclosure of contact information and collecting cases); Pena, 2021 WL 2250766, at *8 (same).

### 4. Equitable tolling is not warranted at this time.

Plaintiffs ask the Court to toll the statute of limitations for all potential opt-in plaintiffs until notice is distributed.  (ECF Nos. 118 at 21–27; 139 at 13–14).  Defendants oppose equitable tolling and argue that any tolling should be limited to the parties' prior agreements.  (ECF No. 132 at 20–23).

"Normally, the FLSA's statute of limitations runs when a plaintiff files with the court consent to join the collective action."  Mendoza, 2013 WL 5211839, at *10.  The equitable tolling doctrine permits the Court to toll the statute of limitations "as necessary to avoid inequitable circumstances."  Iavorski v. U.S. Imm. & Nat'n Serv., 232 F.3d 124, 129 (2d Cir. 2000).  "Equitable

tolling is appropriate 'only in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights.'" Garcia v. Chipotle Mexican Grill, Inc., 16 Civ. 601 (ER), 2016 WL 6561302, at *10 (S.D.N.Y. Nov. 4, 2016) (quoting Vasto v. Credico (USA) LLC, No. 15 Civ. 9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)); accord Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003). "An extraordinary circumstance might exist if the employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action . . . or if the defendant concealed from the plaintiff the existence of the cause of action[.]" Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011).

To justify equitable tolling, Plaintiffs point to Judge Caproni's denial of the First Collective Motion as moot when she granted Defendants' motion to dismiss, which the Second Circuit reversed and remanded. (ECF No. 118 at 23–24.) The Court finds that this does not represent the sort of "rare and exceptional circumstances" necessary to justify equitable tolling. Garcia, 2016 WL 6561302, at *10 (denying request for equitable tolling); see Pena, 2021 WL 2250766, at *9 (same). At this time, it "is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice." Whitehorn, 767 F. Supp. 2d at 450. Because the Court is authorizing notice to a potentially large group of opt-in plaintiffs, "the determination as to the timeliness of each future plaintiff's action is better reserved for a future proceeding." Id. Accordingly, Plaintiffs' request for equitable tolling is denied, with the understanding that individual opt-in plaintiffs may seek tolling on demonstrating its applicability to that plaintiff's

circumstances.  See Pena, 2021 WL 2250766, at *9 (denying equitable tolling but allowing opt-in

plaintiffs to raise request in future); Mendoza, 2013 WL 5211839, at *10 (same).[11]

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is GRANTED IN PART and DENIED IN

PART as follows:

1. Pursuant to 29 U.S.C. § 216(b), the Court conditionally certifies the Collective, which
   is comprised of sales, floor, and assistant floor managers who worked at DSMNY on
   or after June 3, 2018.

2. By **Wednesday, October 9, 2024**, the parties shall meet and confer regarding the
   Court-ordered changes to the Proposed Notice discussed in this Opinion & Order and
   submit a revised, redlined notice for the Court's review and approval.

3. By **Wednesday, October 9, 2024**, Defendants shall produce to Plaintiffs, for members
   of the Collective, the following information: (i) name; (ii) last known mailing address;
   (iii) last known telephone number; (iv) email address if known; and (v) dates of
   employment.

4. Once approved by the Court, the notice and consent form (the "Notice") shall be
   mailed and sent via text message to all potential members of the Collective, who must
   opt-in to this action within 60 days of the date of distribution of the Notice.

---

[11] Indeed, it is not clear that the parties even agree which periods they tolled, which is further reason to defer any decision on tolling until an opt-in plaintiff asserts that they are entitled to tolling.  (Compare ECF No. 118 at 22–24 with ECF No. 132 at 20–21).

5. Plaintiffs' request for equitable tolling is DENIED without prejudice to any individual plaintiff's ability to request tolling on a showing that tolling applies to that plaintiff's particular circumstances.

The Clerk of the Court is respectfully directed to close ECF No. 117.

Dated:      New York, New York
            September 25, 2024

SO ORDERED.

_____
SARAH L. CAVE
**United States Magistrate Judge**