# Josh Bernstein, P.C.
## Civil Rights & Employment Law

Josh Bernstein, P.C.                                      (Phone) (646) 308-1515
447 Broadway, 2nd Fl.                                     (Fax)    (718) 679-9517
New York, NY 10013                                        jbernstein@jbernsteinpc.com

October 24, 2025

**RE: Request to Approve FLSA Settlement Agreement**

The Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18A
New York, NY 10007-1312

*Daniel Abbott, et al. v. Comme des Garcons, Ltd., et al.,* Index No. 21 cv 4929

Judge Cave,

I represent Plaintiffs Gabriel Herrera, Curtis Hennager, Daniel Abbott, Elizabeth Ammerman, Amir Azarcon, Sean Conway, Blake Martin, Madison Murphy, Carlin Rollenhagen, Chynna Taylor, Winston Tolliver, David Unich, Dylan Warmack, and Fnan Ysahak ("Plaintiffs") in the above-captioned matter, and write on behalf of all parties to seek the Court's approval of the settlement agreement ("FLSA Settlement Agreement") annexed hereto as Exhibit 1 pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ("*Cheeks*").

Five Plaintiffs – Gabriel Herrera, Curtis Hennager, Carlin Rollenhagen, Amir Azarcon, and Chynna Taylor[1] ( the "FLSA Plaintiffs") – have asserted claims under the FLSA in this action, and as such, this application and annexed settlement agreement is limited to the FLSA Plaintiffs' wage & hour claims within the FLSA statute of limitations. *See* Fourth Amended Complaint ¶¶ 215-221, annexed hereto as Exhibit 2. Plaintiffs' remaining claims are asserted under the New York Labor Law. *Id.* ¶¶ 222-235. Those claims are addressed in a separate confidential settlement agreement that does not require judicial review ("State Law Agreement"). *See Lau v. Wells Fargo & Co.*, 20 Civ. 3870, 2022 U.S. Dist. Lexis 244155 fn. 1 (S.D.N.Y. Dec. 12, 2022).

In determining whether a settlement is "fair and reasonable" under *Cheeks, supra,* courts consider the following factors:

---

[1] Chynna Marie Taylor opted in to this matter as a member of the FLSA collective on November 20, 2024.  Defendants dispute that Taylor has timely FLSA claims, but have agreed to include her in the FLSA Settlement Agreement for the sole purpose of facilitating settlement.

> (1) the plaintiff's range of possible recovery; (2) the extent to which the
> settlement will enable the parties to avoid anticipated burdens and expenses in
> establishing their respective claims and defenses; (3) the seriousness of the
> litigation risks faced by the parties; (4) whether the settlement agreement is the
> product of arms'-length bargaining between experienced counsel; and (5) the
> possibility of fraud or collusion.

*Fisher v. SD Protection, Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 225-36 (S.D.N.Y. 2012)).

The total amount of money paid to the FLSA Plaintiffs pursuant to the FLSA Settlement Agreement is $134,000, with payments to each of the FLSA Plaintiffs as follows:

> Gabriel Herrera, $44,318;
> Curtis Hennager, $5,505;
> Carlin Rollenhagen, $28,695;
> Amir Azarcon, $451;
> Chynna Taylor, $10,400.

Counsel for Plaintiffs will receive $44,630 in connection with this settlement, which is a hair under 1/3 of the total settlement amount.

## Gabriel Herrera

The time-period during which Plaintiff Gabriel Herrera is alleged to have been improperly misclassified and unlawfully deprived of overtime is January 2018 to May 2021. Ex. 2 ¶ 29. The time-period of January 2018-June 3, 2018 is beyond the FLSA statute of limitations – as this case was filed on June 3, 2021 – and Mr. Herrera's legal claims for that time-period are addressed in the State Law Agreement.

From 6/3/2018-12/31/2018 Mr. Herrera received $1,880 in biweekly pay on a salary basis, resulting in an overtime premium of $35.25 ( ( 1,880 / 80 ) x 1.5 = 35.25). From 1/1/2019-9/8/2019, Mr. Herrera received $2,162 in biweekly pay on a salary basis, resulting in an overtime premium of $40.54 ((2,162 / 80) x 1.5 = 40.54). From 9/9/2019-5/3/2021, Mr. Herrera received $2,250 in biweekly pay on a salary basis, resulting in an overtime premium of 42.19 ((2,250 / 80) x 1.5 = 42.19).

Plaintiffs estimate recoverable overtime hours at 600/annum. Accordingly, were Mr. Herrera to prevail on his FLSA claims, he could be entitled to $10,575 for the period of 6/3/2018-12/31/2018 ((600 x .5) x 35.25 = 10,575), $16,216 for the period of 1/1/2019-9/8/2019 ((600 x 2/3) x 40.54 = 16,216), and $42,190 for the period of 9/9/2019-5/3/2021(600 x 1 2/3) x 42.19 = 42,190). Accordingly, if Mr. Herrera was to achieve total victory on his overtime claims, the maximum total underlying amount owed is $68,981.

If Defendants were unable to prevail on a good-faith affirmative defense, Mr. Herrera could recover the same amount as liquidated damages. Accordingly, Mr. Herrera's maximum recovery on his FLSA claims is $137,962. The $44,318 payment represents a little over 32% of maximum recovery, which is a fair and reasonable settlement given the litigation risk in this matter. *See, e.g., Zorn-Hill v. A2B Taxi LLC*,

Nos. 19 Civ. 1058, 18 Civ. 11165, 2020 WL 5578357, at *4-5 (S.D.N.Y. Sept. 17, 2020) (approving settlement amount equal to 12.5 percent of the plaintiffs' best-case scenario recovery in case involving "major factual and legal litigation risks"); *Beckert v. Ronirubinov*, No. 15 Civ. 1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving award of approximately 25% of maximum recovery where the plaintiff faced risks from "lack of documentation and conflicting witness support" (quotation marks omitted)). Indeed, adding back in the 1/3 attorneys' fees deducted from Mr. Herrera's portion of the settlement, Mr. Herrera is recovering over 96% of the underlying overtime owed (68,981 x 2/3 = 45,987; 44,318 / 45,987 = .964), and close to 50% of his maximum recovery.

As to the range of recoveries, it is quite likely Mr. Herrera would receive compensation for a fraction of the hours alleged. His timesheets show closer to 200 overtime hours per annum than the 600 claimed, which would cut his recovery to 1/3. Because Mr. Herrera bears the burden of proof of establishing his hours in excess of 40 per week, and has scant evidence beyond oral testimony of his hours beyond his timesheets, it would be an exceedingly tough road to hoe to secure the maximum recovery described above.

This settlement has been reached before Mr. Herrera has been deposed and Plaintiffs have taken any depositions. Accordingly, Mr. Herrera will be spared the expense of depositions of the Defendants and their employees, and expert witnesses as to the amount of damages and the structuring of Plaintiffs' positions. Mr. Herrera will likewise avoid the time and expense of preparing for and sitting for his deposition, along with the risk he will provide testimony undermining his claims on liability and damages. Likewise, Mr. Herrera will receive payment now rather than years later, after summary judgment motions, jury trial, and any appeals have been decided.

There is a serious litigation risk that Mr. Herrera would lose entirely, as the issue of whether Mr. Herrera was properly classified as a manager under the Executive Exemption is hotly contested. The documents produced in discovery describing the job duties of Mr. Herrera's positions do so in overwhelmingly managerial terms, and Mr. Herrera would have to convince a jury via oral testimony that the actuality of his job duties were at extreme variance with how they are described in the relevant documents.

As to whether the settlement is the result of arms-length negotiations between experienced counsel and the possibility of collusion, as your Honor is aware, this has been a hard-fought litigation that has stretched on for over four years including dispositive motion practice, appeals, and antagonism between the parties' respective counsel, including threats of sanctions and motions to strike inflammatory pleadings. Indeed, far from any hint of collusion, the parties' respective counsel had to overcome the rough-and-tumble history of this litigation to reach a settlement. Two prior settlement conferences before the Court at various points in this litigation were unsuccessful in the parties reaching a settlement, and this matter has been hard and fairly fought. Counsel for Plaintiffs has no connection to Defendants or their counsel, and is an employment lawyer who exclusively represents employees. There has been no fraud or collusion by the parties or their respective counsel.

**Curtis Hennager**

The time-period during which Plaintiff Curtis Hennager is alleged to have been improperly misclassified and unlawfully deprived of overtime is May 2015 to August 2018. Ex. 2 ¶ 25. Only June 3, 2018-August 31, 2018 are within the FLSA statute of limitations; the overwhelming majority of Mr. Hennager's damages are under the New York Labor Law only and are addressed in the State Law Agreement.

Mr. Hennager received $2,640 in biweekly pay on a salary basis during the relevant time-period, resulting in an overtime premium of $49.50 ((2,640 / 80) x 1.5 = 49.50). At 600 hours per annum in claimed overtime, Mr. Hennager could recover approximately $7,425 in underlying overtime if he was able to prove the entirety of his hours claimed ((600 x ¼) x 49.50 = 7,425). If Defendants were unable to prevail on a good-faith affirmative defense, Mr. Hennager could recover the same amount as liquidated damages. Accordingly, Mr. Hennager's maximum recovery on his FLSA claims is $14,850. The $5,505 payment represents 37% of Mr. Hennager's maximum recovery on his FLSA claims, which is fair and reasonable given the litigation risk in this matter. *See Zorn-Hill, Beckert, supra*. Indeed, adding back in the 1/3 attorneys' fees deducted from Mr. Hennager's portion of the settlement, Mr. Hennager is recovering more than 100% of the underlying overtime owed (7,425 x 2/3 = 4,950; 5,505/4,950 = 1.11), and over 50% of his maximum recovery.

As to the range of recoveries, it is quite likely Mr. Hennager would receive a fraction of the hours alleged. Like Mr. Herrera, Mr. Hennager's timesheets show closer to 200 hours per annum than the 600 claimed, which would cut his recovery to 1/3. Because Mr. Hennager bears the burden of proof of establishing his hours in excess of 40 per week, and has scant evidence beyond oral testimony of his hours beyond his timesheets, it would be an exceedingly tough road to hoe to secure the maximum recovery described above.

This settlement has been reached before Mr. Hennager has been deposed and Plaintiffs have taken any depositions. Accordingly, Mr. Hennager will be spared the expense of depositions of the Defendants and their employees, and expert witnesses as to the amount of damages and the structuring of Plaintiffs' positions. Mr. Hennager will likewise avoid the time and expense of preparing for and sitting for his deposition, along with the risk he will provide testimony undermining his claims on liability and damages.

There is a serious litigation risk that Mr. Hennager would lose entirely, as the issue of whether Mr. Hennager was properly classified as a manager under the Executive Exemption is hotly contested. The documents produced in discovery describing the job duties of Mr. Hennager's position do so in overwhelmingly managerial terms, and Mr. Hennager would have to convince a jury via oral testimony that the actuality of his job duties were wildly at variance with how they are described in the relevant documents.

As to whether the settlement is the result of arms-length negotiations between experienced counsel and the possibility of collusion, as your Honor is aware, this has been a hard-fought litigation that has stretched on for over four years including dispositive motion practice, appeals, and antagonism between the parties' respective counsel, including threats of sanctions and motions to strike inflammatory pleadings. Indeed, far from any hint of collusion, the parties' respective counsel had to overcome the rough-and-tumble history of this litigation to reach a settlement. Two prior settlement

conferences before the Court at various points in this matter were unsuccessful in the parties reaching a settlement, and this matter has been hard and fairly fought. Counsel for Plaintiffs has no connection to Defendants or their counsel, and is an employment lawyer who exclusively represents employees. There has been no fraud or collusion by the parties or their respective counsel.

**Carlin Rollenhagen**

The time-period during which Plaintiff Carlin Rollenhagen is alleged to have been improperly misclassified and unlawfully deprived of overtime is October 2017 to September 2019. Ex. 2 ¶ 41. June 3, 2018-September 29, 2019 are within the FLSA statute of limitations; the remainder of Mr. Rollenhagen's damages are under the New York Labor Law only and are addressed in the State Law Agreement.

From 6/3/2018-12/30/2018, Mr. Rollenhagen received $1,923.08 in biweekly pay on a salary basis, resulting in an overtime premium of $36.06 ((1,923.08 / 80) x 1.5 = 36.06). From 1/1/2019-6/16/2019, Mr. Rollenhagen received $2,076.92 in biweekly pay on a salary basis, resulting in an overtime premium of $38.94 ((2,076.92 / 80) x 1.5 = 38.94). From 6/17/2019-9/29/2019, Mr. Rollenhagen receive $ 2,346.15 in biweekly pay on a salary basis, resulting in an overtime premium of $43.99 ((2,346.15 / 80) x 1.5 = 43.99).

Plaintiffs estimate recoverable overtime hours at 600/annum. Accordingly, were Mr. Rollenhagen to prevail on his FLSA claims, he could be entitled to $10,818 ((600 x .5) x 36.06 = 10,818) for the period of 6/3/2018-12/30/2018; $12,617 ((600 x .54) x 38.94 = 12,617) for the period of 1/1/2019-6/16/2019, and $5,543  ((600 x .21) x 43.99 = 5,543) for the period of 6/17/2019-9/29/2019. Accordingly, if Mr. Rollenhagen was to achieve total victory on his overtime claims, the maximum total underlying amount owed is $28,978.

If Defendants were unable to prevail on a good-faith affirmative defense, Mr. Rollenhagen could recover the same amount as liquidated damages. Accordingly, Mr. Rollenhagen's maximum recovery on his FLSA claims is $57,956. The $28,695 payment represents a hair under 50% of maximum recovery, which is a fair and reasonable settlement given the litigation risk in this matter. *See, e.g., Zorn-Hill, Beckert, supra.* Indeed, adding back in the 1/3 attorneys' fees deducted from Mr. Rollenhagen's portion of the settlement, Mr. Rollenhagen is recovering well-over 100% of the underlying overtime owed (28,978 x 2/3 = 19,318; 28,695 / 19,318 = 1.48), and a hair under 50% of his maximum recovery.

As to the range of recoveries, it is quite likely Mr. Rollenhagen would receive a fraction of the hours alleged. Like the other Plaintiffs, his timesheets show closer to 200 overtime hours per annum than the 600 claimed, which would cut his recovery to 1/3. Because Mr. Rollenhagen bears the burden of proof of establishing his hours in excess of 40 per week, and has scant evidence beyond oral testimony of his hours beyond his timesheets, it would be an exceedingly tough road to hoe to secure the maximum recovery described above.

This settlement has been reached before Mr. Rollenhagen has been deposed and Plaintiffs have taken any depositions. Accordingly, Mr. Rollenhagen will be spared the expense of depositions of the Defendants and their employees, and expert witnesses as to

the amount of damages and the structuring of Plaintiffs' positions. Mr. Rollenhagen will likewise avoid the time and expense of preparing for and sitting for his deposition, along with the risk he will provide testimony undermining his claims on liability and damages. Likewise, Mr. Rollenhagen will receive payment now rather than years later, after summary judgment motions, jury trial, and any appeals have been decided.

There is a serious litigation risk that Mr. Rollenhagen would lose entirely, as the issue of whether Mr. Rollenhagen was properly classified as a manager under the Executive Exemption is hotly contested. The documents produced in discovery describing the job duties of Mr. Rollenhagen's positions do so in overwhelmingly managerial terms, and Mr. Rollenhagen would have to convince a jury via oral testimony that the actuality of his job duties were at extreme variance with how they are described in the relevant documents.

As to whether the settlement is the result of arms-length negotiations between experienced counsel and the possibility of collusion, as your Honor is aware, this has been a hard-fought litigation that has stretched on for over four years including dispositive motion practice, appeals, and antagonism between the parties' respective counsel, including threats of sanctions and motions to strike inflammatory pleadings. Indeed, far from any hint of collusion, the parties' respective counsel had to overcome the rough-and-tumble history of this litigation to reach a settlement. Two prior settlement conferences before the Court at various points in this litigation were unsuccessful in the parties reaching a settlement, and this matter has been hard and fairly fought. Counsel for Plaintiffs has no connection to Defendants or their counsel, and is an employment lawyer who exclusively represents employees. There has been no fraud or collusion by the parties or their respective counsel.

**Amir Azarcon**

The time-period during which Plaintiff Amir Azarcon is alleged to have been improperly misclassified and unlawfully deprived of overtime is October 2017 to June 2018. Ex. 2 ¶ 17. Only 6/3/2018-6/17/2018 are within the FLSA statute of limitations; the overwhelming majority of Mr. Azarcon's damages are under the New York Labor Law only and are addressed in the State Law Agreement.

Mr. Azarcon received $1,807.69 in biweekly pay on a salary basis during the relevant time-period, resulting in an overtime premium of $33.89 (($1,807.69 / 80) x 1.5 = 33.89). At 600 hours per annum in claimed overtime, Mr. Azarcon could recover approximately $773 in underlying overtime if he was able to prove the entirety of his hours claimed ((600 x .038) x 33.89 = 773). If Defendants were unable to prevail on a good-faith affirmative defense, Mr. Azarcon could recover the same amount as liquidated damages. Accordingly, Mr. Azarcon's maximum recovery on his FLSA claims is $1,546. The $451 payment represents 29% of Mr. Azarcon's maximum recovery on his FLSA claims, which is fair and reasonable given the litigation risk in this matter. *See Zorn-Hill, Beckert, supra.* Indeed, adding back in the 1/3 attorneys' fees deducted from Mr. Azarcon's portion of the settlement, Mr. Azarcon is recovering more than 87% of the underlying overtime owed (773 x 2/3 = 515; 451/515 = .87), and a hair under 1/3 of his maximum recovery.

As to the range of recoveries, it is quite likely Mr. Azarcon would receive a fraction of the hours alleged. There are no timesheets for Mr. Azarcon, and accordingly, Mr. Azarcon would have to rely entirely on oral testimony to establish his hours. This would be exceedingly difficult.

This settlement has been reached before Mr. Azarcon has been deposed and Plaintiffs have taken any depositions. Accordingly, Mr. Azarcon will be spared the expense of depositions of the Defendants and their employees, and expert witnesses as to the amount of damages and the structuring of Plaintiffs' positions. Mr. Azarcon will likewise avoid the time and expense of preparing for and sitting for his deposition, along with the risk he will provide testimony undermining his claims on liability and damages.

There is a serious litigation risk that Mr. Azarcon would lose entirely, as the issue of whether Mr. Azarcon was properly classified as a manager under the Executive Exemption is hotly contested. The documents produced in discovery describing the job duties of Mr. Azarcon's position do so in overwhelmingly managerial terms, and Mr. Azarcon would have to convince a jury via oral testimony that the actuality of his job duties were wildly at variance with how they are described in the relevant documents.

As to whether the settlement is the result of arms-length negotiations between experienced counsel and the possibility of collusion, as your Honor is aware, this has been a hard-fought litigation that has stretched on for over four years including dispositive motion practice, appeals, and antagonism between the parties' respective counsel, including threats of sanctions and motions to strike inflammatory pleadings. Indeed, far from any hint of collusion, the parties' respective counsel had to overcome the rough-and-tumble history of this litigation to reach a settlement. Two prior settlement conferences before the Court at various points in this matter were unsuccessful in the parties reaching a settlement, and this matter has been hard and fairly fought. Counsel for Plaintiffs has no connection to Defendants or their counsel, and is an employment lawyer who exclusively represents employees. There has been no fraud or collusion by the parties or their respective counsel.

**Chynna Taylor**

The time-period during which Plaintiff Chynna Taylor is alleged to have been improperly misclassified and unlawfully deprived of overtime is November 2020 to April 2021. Ex. 2 ¶ 45. Ms. Taylor is not an original Plaintiff, and opted-in on November 20, 2024. Docket Entry No. 154. Accordingly, the entirety of Ms. Taylor's claims are outside the FLSA statute of limitations, and she could only recover on her FLSA claims if she is able to prevail on the issue of equitable tolling. The dates of her employment are 11/23/2020-4/2/2021.

Ms. Taylor received $2,692.31 in biweekly pay on a salary basis during the relevant time-period, resulting in an overtime premium of $50.48 (($2,692.31 / 80) x 1.5 = 50.48). At 600 hours per annum in claimed overtime, Ms. Taylor could recover approximately $10,601 in underlying overtime if she was able to prove the entirety of her hours claimed ((600 x .35) x 50.48 = 10,601). If Defendants were unable to prevail on a good-faith affirmative defense, Ms. Taylor could recover the same amount as liquidated damages. Accordingly, Ms. Taylor's maximum recovery on her FLSA claims is $21,202 The $10,400 payment represents a hair under 50% of Ms. Taylor's maximum recovery on

her FLSA claims, which is fair and reasonable given the litigation risk in this matter. *See Zorn-Hill, Beckert, supra*. Adding back in the 1/3 attorneys' fees deducted from Ms. Taylor's portion of the settlement, Mr. Taylor is recovering more than 100% of the underlying overtime owed (10,601 x 2/3 = 7,067; 10,400/7,067 = 1.47), and a hair under 50% of her maximum recovery.

As to the range of recoveries, it is quite likely Ms. Taylor would receive a fraction of the hours alleged. Her timesheets are all over the map, with some weeks showing hours beyond 40/week, and others showing less than 40 hour/week. Ms. Taylor would have to establish the alteration/inaccuracy of her timesheets in order to recover anything close to 600 hours per annum in overtime, an exceedingly difficult task.

This settlement has been reached before Ms. Taylor has been deposed and Plaintiffs have taken any depositions. Accordingly, Ms. Taylor will be spared the expense of depositions of the Defendants and their employees, and expert witnesses as to the amount of damages and the structuring of Plaintiffs' positions. Ms. Taylor will likewise avoid the time and expense of preparing for and sitting for his deposition, along with the risk he will provide testimony undermining his claims on liability and damages.

There is a serious litigation risk that Ms. Taylor would lose entirely, as the issue of whether Ms. Taylor was properly classified as a manager under the Executive Exemption is hotly contested. The documents produced in discovery describing the job duties of Ms. Taylor's position do so in overwhelmingly managerial terms, and Ms. Taylor would have to convince a jury via oral testimony that the actuality of her job duties were wildly at variance with how they are described in the relevant documents.

As to whether the settlement is the result of arms-length negotiations between experienced counsel and the possibility of collusion, as your Honor is aware, this has been a hard-fought litigation that has stretched on for over four years including dispositive motion practice, appeals, and antagonism between the parties' respective counsel, including threats of sanctions and motions to strike inflammatory pleadings. Indeed, far from any hint of collusion, the parties' respective counsel had to overcome the rough-and-tumble history of this litigation to reach a settlement. Two prior settlement conferences before the Court at various points in this matter were unsuccessful in the parties reaching a settlement, and this matter has been hard and fairly fought. Counsel for Plaintiffs has no connection to Defendants or their counsel, and is an employment lawyer who exclusively represents employees. There has been no fraud or collusion by the parties or their respective counsel.

### Attorneys' Fees

Counsel for Plaintiffs will receive $44,630 in connection with this settlement, which is a hair under 1/3 of the contingency fee agreed by the Plaintiffs ((134,000 x 1/3) = $44,667). Annexed hereto as Exhibit 3 are the retainer agreements for each FLSA Plaintiff.

The Second Circuit has held: "In sum, we hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases. Of course, no matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the

magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000). "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court". Id.

      Counsel for Plaintiffs expended a minimum of 517 hours in pursuit of Plaintiffs' wage & hour claims[2]. Timesheets annexed hereto as Exhibit 4. Counsel for Plaintiffs has been admitted to practice since 2010 and has an extensive background in employment and wage cases. Accordingly, a $500 hourly rate – which is lower than Counsel for Plaintiffs' rate in non-contingency fee matters – is reasonable. *See e.g. Maldonado v. Loxton, Inc.*, 20-CV-5776, 2024 U.S. Dist. Lexis 184716, *40-41 (E.D.N.Y. Oct. 9, 2024). Accordingly, Counsel for Plaintiffs' hours could support an award up to $258,500. Counsel for Plaintiffs is receiving less than this amount across both settlements, and likewise less than 1/3 of the settlement proceeds across both settlements.

      This is a complex 14-Plaintiff matter that involved multiple rounds of dispositive motion practice, the dismissal of the matter and then reinstatement by the Second Circuit in a precedential decision, and intricate discovery and procedural issues. Operating on a pure contingency fee retainer, Counsel for Plaintiffs bore the entirety of the risk of loss. The quality of representation is reflected in the persistent pursuit of this matter over the course of 4+ years and 184 docket entries. The requested fee of $44,630 is proportional to the settlement, and consistent with public policy.

      Accordingly, the parties respectfully request that your Honor approve the settlement agreement annexed hereto as Exhibit 1 and retain jurisdiction over its enforcement, and to dismiss this matter with prejudice with leave for Plaintiffs to write to the Court to reopen within 30 days.

Very truly yours,

_____
/s/
Joshua Alexander Bernstein

---

[2] The timesheets significantly understate the amount of hours expended as there are a number of entries with descriptions of work without exact time figures that have been excluded entirely from calculation, and the vast majority of electronic communications in this matter – well-exceeding 500 – are not reflected in the timesheets.